## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Mark Small
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
Abigail R. Recker
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Termination of the Parent-Child Relationship of, | February 2, 2016 |
| E.R. (Minor Child), | Court of Appeals Cause No. 21A05-1508-JT-1233 |
| and, | Appeal from the Fayette Circuit Court |
| J.B. (Father), | The Honorable Beth A. Butsch, Judge |
| Appellant-Defendant, | Trial Court Cause No. 21C01-1411-JT-291 |
| v. | |

Indiana Department of Child Services,

*Appellee-Petitioner.*

**Barnes, Judge.**

# Case Summary

J.B. ("Father") appeals the termination of his parental rights to E.R. We affirm.

# Issues

Father raises two issues, which we restate as:

I.     whether the trial court properly found that there is a reasonable probability that the conditions resulting in E.R.'s removal or the reasons for placement outside Father's home will not be remedied; and

II.     whether the trial court properly found that termination of Father's parental rights was in E.R.'s best interests.

# Facts

E.R. was born in November 2012 to N.R. ("Mother"). Mother also has two older children. Mother and the three children were residing with her aunt, and Mother admitted herself to WIT House, a residential substance abuse treatment

facility in Richmond. She left the three children in the care of her aunt. In March 2013, the aunt notified the Department of Child Services ("DCS") that she could no longer care for the children and that Mother would not be welcome to reside with the aunt after leaving WIT House. DCS removed the children from the aunt and filed a petition alleging that the children were children in need of services ("CHINS"). Mother admitted to the allegations in the CHINS petition, and the children were placed in foster care. At that time, E.R.'s biological father was unknown. Eventually, DCS filed a petition to terminate Mother's parental rights.

[4] In January 2014, Mother identified some potential fathers for E.R., and DCS started searching for the men. DCS was eventually able to locate Father, who was incarcerated, and in December 2014, DNA testing confirmed that he was E.R.'s biological father. DCS visited Father in January 2015 and gave him the DNA results. The trial court held an initial hearing in March 2015, and Father admitted that E.R. was a CHINS.

[5] Father has been incarcerated since May 2014. He pled guilty to Class B felony burglary, two counts of Class C felony forgery, and Class D felony receiving stolen property. His earliest release date is January 2020. Father has prior convictions for Class B misdemeanor battery, Class B misdemeanor furnishing alcohol to a minor, and Class A misdemeanor possession of marijuana. He also has had substance abuse issues with opiates. In early 2014, when he was not incarcerated, Mother told him that he might be E.R.'s father. He did nothing to confirm or deny paternity at that time because he "was in and out of

[a] relationship with [his] wife and at the time [he] was more concerned about that [than he] was a child." Tr. p. 148. Father has never visited E.R. and has no relationship with her. Father has five other children, and his parental rights to two of the other children have been terminated.

[6] DCS filed an amended petition to terminate Mother's and Father's parental rights. A hearing was held in June 2015, and in August 2015, the trial court issued findings of fact and conclusions thereon terminating Mother's and Father's parental rights.[1] Father now appeals.

## Analysis

[7] Father challenges the termination of his parental rights to E.R. The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. *In re I.A.*, 934 N.E.2d 1127, 1132 (Ind. 2010). "A parent's interest in the care, custody, and control of his or her children is 'perhaps the oldest of the fundamental liberty interests.'" *Id.* (quoting *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054 (2000)). "Indeed the parent-child relationship is 'one of the most valued relationships in our culture.'" *Id.* (quoting *Neal v. DeKalb County Div. of Family & Children*, 796 N.E.2d 280, 285 (Ind. 2003)). We recognize of course that parental interests are not absolute and must be subordinated to the child's interests when determining the proper disposition of a petition to terminate parental rights. *Id.*

---

[1] Mother is not a party to this appeal.

Thus, "'[p]arental rights may be terminated when the parents are unable or unwilling to meet their parental responsibilities.'" *Id.* (quoting *In re D.D.*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*).

[8] When reviewing the termination of parental rights, we do not reweigh the evidence or judge witness credibility. *Id.* We consider only the evidence and reasonable inferences that are most favorable to the judgment. *Id.* We must also give "due regard" to the trial court's unique opportunity to judge the credibility of the witnesses. *Id.* (quoting Ind. Trial Rule 52(A)). Here, the trial court entered findings of fact and conclusions thereon in granting DCS's petition to terminate Father's parental rights. When reviewing findings of fact and conclusions thereon entered in a case involving a termination of parental rights, we apply a two-tiered standard of review. First, we determine whether the evidence supports the findings, and second we determine whether the findings support the judgment. *Id.* We will set aside the trial court's judgment only if it is clearly erroneous. *Id.* A judgment is clearly erroneous if the findings do not support the trial court's conclusions or the conclusions do not support the judgment. *Id.*

[9] Indiana Code Section 31-35-2-8(a) provides that "if the court finds that the allegations in a petition described in [Indiana Code Section 31-35-2-4] are true, the court shall terminate the parent-child relationship." Indiana Code Section 31-35-2-4(b)(2) provides that a petition to terminate a parent-child relationship involving a child in need of services must allege, in part:

(B)    that one (1) of the following is true:

    (i)    There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

    (ii)    There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

    (iii)    The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C)    that termination is in the best interests of the child; and

(D)    that there is a satisfactory plan for the care and treatment of the child.

DCS must establish these allegations by clear and convincing evidence. *Egly v. Blackford County Dep't of Pub. Welfare*, 592 N.E.2d 1232, 1234 (Ind. 1992).

## *I. Remedy of Reasons for Placement*

[10]    Father first argues that the trial court's conclusion that the conditions that resulted in E.R.'s removal or the reasons for placement outside Father's home will not be remedied is clearly erroneous.[2] In making this determination, the

---

[2] Father also argues that the trial court's conclusion that the continuation of the parent-child relationship poses a threat to the well-being of E.R. is clearly erroneous. Indiana Code Section 31-35-2-4(b)(2)(B) is

trial court must judge a parent's fitness to care for his or her child at the time of the termination hearing and take into consideration evidence of changed conditions. *In re J.T.*, 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), *trans. denied*. However, the trial court must also "evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child." *Id.*

[11] Father first argues that he was not involved in the circumstances that led to E.R.'s removal and, consequently, DCS failed to prove a reasonable probability that the conditions that resulted in E.R.'s removal will not be remedied. According to Father, "the analysis should end there." Appellant's Br. p. 9. However, the statute alternatively allows DCS to prove a reasonable probability that the "reasons for placement outside the home of the parents" will not be remedied. I.C. § 31-35-2-4(b)(2)(B)(i); *see also I.A.*, 934 N.E.2d at 1134 ("[T]he inquiry in this case is whether there is a reasonable probability that the reason for placement outside the home of the parents will not be remedied."). Thus, the inquiry here is whether there is a reasonable probability that the reason for placement outside Father's home will not be remedied. By the time that DCS

---

written in the disjunctive. Subsection (b)(2)(B)(iii), which concerns repeated CHINS adjudications, is inapplicable here. Consequently, DCS was required to demonstrate by clear and convincing evidence a reasonable probability that either: (1) the conditions that resulted in E.R.'s removal or the reasons for placement outside the home of the parents will not be remedied, or (2) the continuation of the parent-child relationship poses a threat to the well-being of E.R. The trial court found a reasonable probability that the conditions that resulted in E.R.'s removal and continued placement outside Father's home would not be remedied, and there is sufficient evidence in the record to support the trial court's conclusion. Thus, we need not determine whether there was a reasonable probability that the continuation of the parent-child relationship poses a threat to E.R.'s well-being. *See, e.g., Bester v. Lake County Office of Family & Children*, 839 N.E.2d 143, 148 n.5 (Ind. 2005); *In re T.F.*, 743 N.E.2d 766, 774 (Ind. Ct. App. 2001), *trans. denied*.

was able to locate Father and confirm that he was E.R.'s biological father, Father was already incarcerated. Clearly, DCS could not have placed E.R. with Father due to his incarceration, and he is not scheduled to be released until 2020.

[12] Father argues that he has not been offered any services and that he is involved in the PLUS program at Branchville Correctional Facility. Father argues that "[t]his would seem to address negative aspects of [his] life that DCS recited in court." Appellant's Br. p. 9. However, the evidence presented of Father's participation in a program while incarcerated does not outweigh his habitual patterns of conduct. DCS presented evidence that Father has several criminal convictions and a history of substance abuse. He is currently incarcerated for convictions for burglary, forgery, and receiving stolen property. Although Mother informed Father in early 2014 that he might be E.R.'s father, he made no effort to confirm or deny that allegation and made no effort to establish a relationship with E.R. As for DCS's failure to offer services to Father, it is well settled that DCS is not required to provide a parent with services directed at reunification while the parent is incarcerated. *See Rowlett v. Vanderburgh County Ofc. of Family & Children*, 841 N.E.2d 615, 622 (Ind. Ct. App. 2006), *trans. denied*. Given Father's incarceration, criminal and substance abuse history, and lack of any relationship with E.R., the trial court properly found a reasonable probability that the reasons for placement outside Father's home will not be remedied.

## II.  Best Interests

[13]  Next, Father challenges the trial court's conclusion that termination is in E.R.'s best interests.  In determining what is in the best interests of a child, the trial court is required to look at the totality of the evidence.  *D.D.*, 804 N.E.2d at 267.  In doing so, the trial court must subordinate the interests of the parents to those of the child involved.  *Id.*

[14]  According to Father, termination is not in E.R.'s best interest because Father has never had a chance to establish a relationship with her, he could reduce his incarceration through the completion of programs at the Department of Correction, and he has never had a chance to participate in services.  Father's arguments focus more on himself than E.R.'s best interests.

[15]  Although Father was not incarcerated when Mother first told him that he might be E.R.'s father, he made no effort to establish a relationship with E.R.  His criminal activity and incarceration then prevented him from participating in services or establishing a relationship with E.R.  The court-appointed special advocate ("CASA") testified that E.R. was doing "great" in her current placement and recommended the termination of Father's parental rights.  Tr. p. 135.  Given Father's incarceration, history of criminal activity and substance abuse, lack of a relationship with E.R., and E.R.'s stability in her current placement, we conclude that the trial court properly found that termination of Father's parental rights was in E.R.'s best interests.

# Conclusion

The trial court's termination of Father's parental rights is not clearly erroneous. We affirm.

Affirmed.

Robb, J., and Altice, J., concur.